UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARGILL, INCORPORATED, CARGILL INTERNATIONAL SA, AMLIN CORPORATE INSURANCE, CHARTIS EUROPE, HDI-GERLING NV, MINNETONKA INSURANCE, and TOKIO MARINE & NICHIDO FIRE, for and on behalf of all Subscribing Cargo Insurers, and THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED<br><br>                **Plaintiffs**<br><br>VERSUS<br><br>DEGESCH AMERICA, INC., DETIA DEGESCH GMBH and D & D HOLDINGS, INC.<br><br>                **Defendants** | CIVIL ACTION NO. 11-cv-02036<br><br>SECTION "R"<br>Honorable Sarah S. Vance<br><br>MAGISTRATE (4)<br>Honorable Karen Wells Roby |

## AMENDED COMPLAINT

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA:**

**NOW COME** plaintiffs, Cargill, Incorporated, Cargill International SA, Amlin Corporate Insurance, Chartis Europe, HDI-Gerling NV, Minnetonka Insurance Company, Tokio Marine & Nichido Fire, and The Steamship Mutual Underwriting Association (Bermuda) Limited, through undersigned counsel, and for their Amended Complaint against Degesch America, Inc., Detia Degesch GmbH and D & D Holdings, Inc., to correctly state the name of defendant Degesch America, Inc., and to provide a more definite statement of the factual basis for plaintiffs' claims, aver:

1.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based on 28 U.S.C. §1333.

2.

In the alternative, this Honorable Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. §1332, by virtue of this action being between citizens of different States, or between citizens of a State and citizens of a foreign state, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.

At all material times, plaintiff Cargill, Incorporated (hereafter, "Cargill") was and still is a corporation organized pursuant to the laws of the state of Delaware, with its principal office in Wayzata, Minnesota and was the owner, seller, shipper and/or successor in title to a consignment of 59,691.878 metric tons of US No. 2 Yellow Corn loaded aboard the M/V MARIA V at its Westwego Export Elevator as more fully described below.

4.

At all material times, plaintiff Cargill International SA (hereafter, "CISA") was and still is a corporation organized pursuant to the laws of a foreign state, with its principal office in Geneva, Switzerland and was the owner, buyer, consignee and/or successor in title to the consignment of 59,691.878 metric tons of US No. 2 Yellow Corn loaded aboard the M/V MARIA V at the Westwego Export Elevator as more fully described below.

5.

Plaintiffs Amlin Corporate Insurance, Chartis Europe, HDI-Gerling NV, Minnetonka Insurance Company, Tokio Marine & Nichido Fire, and Subscribing Insurers (hereafter, "Amlin") were, and are, insurance underwriters and/or companies organized and existing pursuant to the laws of a foreign state or states, and were the insurers of the cargo of U.S. Yellow Corn in bulk that was shipped on board the M/V MARIA V as more fully described below. Amlin brings this action for and on behalf of all subscribing insurers who participated in the insurance risk on the subject cargo, as their interests may ultimately appear.

6.

Plaintiff The Steamship Mutual Underwriting Association (Bermuda) Limited (hereafter, "Steamship") was, and is, an insurance protection and indemnity association, underwriter, insurer and/or company organized and existing pursuant to the laws of a foreign state, and was the charterer's legal liability insurer of Cargill and CISA.

7.

At all material times, defendant Degesch America, Inc. (hereafter "Degesch America") was, and still is, a corporation or other legal entity organized and existing pursuant to the laws of a state of the United States, and was in the business of manufacturing and/or distributing fumigants for use and application on ocean-going vessels in commerce on the navigable waters of the United States, and was in the business of applying the said fumigants to cargoes of grain loaded aboard ocean-going vessels in commerce on the navigable waters of the United States.

8.

At all material times, defendant Detia Degesch GmbH (hereafter, "Detia Degesch") was, and still is, a corporation or other legal entity organized and existing pursuant to the laws of a foreign state, and was in the business of manufacturing and/or distributing fumigants for use and application on ocean-going vessels in commerce on the navigable waters of the United States, and/or was in the business of applying the said fumigants to cargoes of grain loaded aboard ocean-going vessels in commerce on the navigable waters of the United States.

9.

At all material times, defendant D & D Holdings, Inc. (hereafter, D & D") was, and still is, a corporation or other legal entity organized and existing pursuant to the laws of a foreign state, and was in the business of manufacturing and/or distributing fumigants for use and application on ocean-going vessels in commerce on the navigable waters of the United States, and/or was in the business of applying the said fumigants to cargoes of grain loaded aboard ocean-going vessels in commerce on the navigable waters of the United States.

10.

Pursuant to a grain sales contract dated April 15, 2010, Cargill sold 60,000 MT of US No.2 or better Yellow Corn to CISA on delivery terms FOB Mississippi River Port. On May 4, 2010, CISA in turn sold the 60,000 MT of corn to Omar Alwais & Partner Co. (hereafter, "Alwais"). The CISA to Alwais sale was on delivery terms, CIF Free Out Tartous, Syria.

11.

The Cargill to CISA sales contract required Cargill to deliver the cargo to CISA in accordance with CISA's final documentary instructions. On July 27, 2010, CISA issued its final delivery instructions to Cargill. These instructions required the issuance of a fumigation certificate showing that the vessel's holds were fumigated with phosphide at a dosage of 60 grams per one thousand cubic feet of each hold space, after loading the corn on board the vessel.

12.

Prior to the events giving rise to the explosions that are the subject of this civil action, on May 1, 2008 and December 15, 2009, Cargill and Degesch America entered into two contracts whereby Cargill agreed to purchase and Degesch America agreed to sell and provide fumigant and fumigation services for Cargill's grain shipments. On or about July 30, 2010, Degesch America agreed to fumigate the holds of the M/V MARIA V utilizing the following method, "Subsurface Trench-In Method 60 Grams Aluminum Phosphide Pellets Per 1000 Cubic Feet of Cargo Space Minimum 18 Days Duration."

13.

On August 19, 2010, Cargill completed loading 59,691.878 metric tons of US No. 2 Yellow Corn aboard the M/V MARIA V at its Export Grain Elevator in Westwego, Louisiana. Following the completion of the loading, defendants Degesch America and/or Detia Degesch and/or D & D (hereafter collectively "Degesch") provided the fumigant Fostoxin and fumigated the grain in all seven of the vessel's cargo holds.

14.

In conjunction with the fumigation, Degesch issued several documents, among them a *Fumigation Certificate* and a *Statement of Fumigant Application Compliance*, both signed by Certified Applicator, Sam Schoo, under the company name Degesch America, Inc. These documents certify that all cargo holds of the M/V MARIA V were fumigated after loading the cargo on board, utilizing the Subsurface (Trench-In) method with 60 grams of Aluminum Phosphide per 1,000 cubic meters of hold space. Mr. Schoo also certified that the fumigant was applied in accordance with the rules and regulations of the United States Department of Agriculture, Federal Grain Inspection Service. Both these certifications proved to be false.

15.

In reliance on the above-described false representations made by the Degesch America's Certified Applicator, the vessel's crew closed and secured the cargo hatch covers in preparation for the vessel sailing, and approximately one hour after Degesch completed the fumigation Cargill permitted the vessel to depart the Cargill berth for sea.

16.

Approximately three hours after setting sail from the Westwego Elevator, a series of explosions erupted in every cargo hold of the vessel. Within the span of two hours all seven cargo holds experienced explosions to varying degrees.

17.

Following the initial explosions, the vessel immediately sought a safe anchorage in the Mississippi River to investigate the casualty. Between August 19th and September 16th, the parties to this maritime venture investigated the cause of the explosions and explored the options for mitigating the losses from, and the consequences of, the explosions.

18.

Following their investigation, two independent marine surveyors concluded that the explosions were caused by the fumigant being applied in piles on the surface of the cargo instead of being applied uniformly subsurface, as required by the defendants' own Application Manual and/or the rules and regulations of the Federal Grain Inspection Service, and/or the terms of the contract governing the application of the fumigant. The piling of the fumigant pellets on the cargo surface caused the fumigant to create phosphine gas at a faster than normal, unsafe rate. The excessive rate at which the phosphine gas was generated, created an explosive atmosphere within the head space of each cargo hold, which in turn caused the gas to spontaneously combust. No external source of ignition was found in any cargo hold by either surveyor. At all material times, Degesch knew that the fumigant gas would spontaneously combust at concentrations over its lower explosive limit. One

of the surveyors opined that impurities or diphosphine in the fumigant may have caused or contributed to the explosions.

19.

Ultimately the vessel's classification society ordered that all the cargo must be discharged from the vessel to perform a thorough examination of the effect, if any, of the explosions on the vessel's structural integrity.

20.

During the parties' investigation into the cause of the loss and their effort to mitigate the losses resulting from the explosions, the ultimate receiver of the cargo in Syria renounced its contract for the purchase of the corn. As a result, and in an effort to mitigate the loss, Cargill and CISA offered the grain for sale to the highest bidder at a widely publicized auction. On October 20, 2010, Cargill and CISA sold the damaged corn to the highest bidder, Theco International SA, for the sum of $8,735,823.00.

21.

The explosions proximately caused Cargill and CISA to sustain a loss in the value of the corn of approximately $6,600,000.00. Cargill and/or CISA also incurred lost charter hire payments in the approximate amount of $3,900,000.00, and barge hire to store the grain pending its resale, and other additional expenses proximately caused by the explosions, in the approximate amount of $1,500,000.00. Cargill and/or CISA also have exposure to the owner of the vessel for the cost of repairing the damage to the ship caused by the explosions, stevedoring expenses to discharge the cargo to barges, barge hire, port expenses and other fees and expenses, which are alleged in the

amount of $2,323,644.15. Finally, Cargill and/or CISA have incurred, and continue to incur, attorneys' fees and costs in defending an arbitration commenced by the owner of the m/v MARIA V, which are also sought as damages against the defendants herein.

22.

Prior to the commencement of the subject voyage, plaintiff Cargill and CISA purchased insurance on the cargo from Amlin, and purchased charterer's legal liability insurance from Steamship, all of which remained in full force and effect, and insured the cargo and Cargill's and CISA's charterer's liability risks for the duration of the voyage.

23.

Following the damage to the cargo on the subject voyage, plaintiffs Cargill and CISA submitted their claim for the cargo losses to Amlin in accordance with the terms of the applicable insurance policy. Amlin paid, or will pay Cargill and CISA's claim in accordance with the terms and conditions of the insurance policy, and have become, or will become, subrogated to the claim to the extent of that payment.

24.

As a result of the explosions, the owner of the M/V MARIA V has alleged claims for physical damage and extra expenses against CISA, and has instituted arbitration in London against CISA in furtherance of those claims. CISA tendered its defense of the ship owner's London arbitration to Degesch, which Degesch rejected. Cargill, CISA and Steamship pray herein for full indemnity and reimbursement from defendants of all charter hire payments paid or to be paid to the vessel's owner, and all losses, costs and expenses associated with any potential liability that CISA

and/or Cargill and/or Steamship may have to the owner of the M/V MARIA V, including all costs of defending the London arbitration.

## **FIRST CAUSE OF ACTION**

25.

The damages resulting from the explosions aboard the M/V MARIA V were not caused by any act or omission of plaintiffs or those for whom plaintiffs may be responsible, but instead were proximately caused by the fault, negligence and/or breach of duty of the defendants in the manufacture and/or application of the fumigant aboard the M/V MARIA V, in the following respects:

1. Failing to spread the fumigant evenly in the cargo;

2. Applying the fumigant in concentrated piles;

3. Failing to apply the fumigant using the subsurface, trench-in method;

4. Applying the fumigant in a way that caused the phosphine gas to exceed the lower flammable limit of 18,000 parts per million, and which caused the gas to spontaneously ignite;

5. Applying the fumigant contrary to the defendants' own application procedures, which call for uniformly spreading the fumigant;

6. Failing to adhere to defendants' own warnings against stacking or piling up the fumigant pellets, as set out in defendants' Application Manual;

7. Failing to follow rules and/or regulations of the U.S. Department of Agriculture, Federal Grain Inspection Service requiring the trench-in subsurface application method in the applicable circumstances;

8. Failing to perform the fumigation with experienced, trained and competent fumigators;

9. Failing to perform the fumigation in accordance with industry customs and standards;

10. Formulating, manufacturing and/or producing the fumigant containing impurities and/or diphosphine; and/or

11. Other acts or failures to act to be shown at trial.

## **SECOND CAUSE OF ACTION**

26.

The damages suffered by the plaintiffs as a result of the explosions aboard the M/V MARIA V were not caused by any act or omission of plaintiffs or those for whom they may be responsible, but instead were proximately caused by the negligent misrepresentation of Degesch America and/or the fraudulently made statements made by Degesch America, in falsely representing and/or intentionally misleading Cargill, CISA and/or the vessel's officers as to the manner in which defendants performed the fumigation aboard the M/V MARIA V, in the following respects:

1. Degesch America's Certified Applicator, Sam Schoo, certified to Cargill and the vessel's officers that the fumigant was applied subsurface when in fact it was not;

2. Degesch America's Certified Applicator, Sam Schoo, certified that the fumigant was applied in accordance with rules and regulations of the Federal Grain Inspection Service, when in fact it was not; and/or

3. Other misrepresentations to be shown at trial.

27.

As a result of the above-enumerated misrepresentations, the crew of the vessel closed and secured the hatch covers and Cargill and CISA permitted the vessel to sail from the berth to commence her sea passage.

### **THIRD CAUSE OF ACTION**

28.

The damages resulting from the explosions aboard the M/V MARIA V were not caused by any act or omission of plaintiffs or those for whom plaintiffs may be responsible, but instead were caused by the breach of contract or warranty by the defendants, in the following respects:

1. Failing to spread the fumigant evenly in the cargo;

2. Applying the fumigant in concentrated piles;

3. Failing to apply the fumigant using the subsurface, trench-in method;

4. Applying the fumigant in a way that caused the phosphine gas to exceed the lower flammable limit of 18,000 parts per million, and which caused the gas to spontaneously ignite

5. Applying the fumigant contrary to the defendants' own application procedures, which call for uniformly spreading the fumigant;

6. Failing to adhere to defendants' own warnings against stacking or piling up the fumigant pellets, as set out in defendants' Application Manual;

7. Failing to follow rules and/or regulations of the U.S. Department of Agriculture, Federal Grain Inspection Service requiring the trench-in subsurface application method in the applicable circumstances;

8. Failing to perform the fumigation in a workmanlike manner as required by the contract;

9. Failing to perform the fumigation with experienced, trained and competent fumigators, as required by the contract;

10. Failing to perform the fumigation in accordance with industry customs and standards, as required by the contract;

11. Failing to report to Cargill any variance by Degesch in the fumigation procedure required by the contract;

12. Formulating, manufacturing and/or producing the fumigant containing impurities and/or diphosphine; and/or

13. Other breaches or failures to act to be shown at trial.

## FOURTH CAUSE OF ACTION

29.

Degesch America's conduct in the application of the fumigant and its fraudulent certification of the fumigation method constituted a violation of the Louisiana Unfair Trade Practices and

Consumer Protection Act, La.Rev.Stat.Ann. 51:1401 et seq., entitling plaintiffs to the recovery of attorneys' fees in this action.

30.

The Louisiana Unfair Trade Practices and Consumer Protection Act provides that "deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

31.

Degesch America employed deceptive acts and/or practices in the conduct of the fumigation services performed, and thereby violated the Louisiana Unfair Trade Practices and Consumer Protection Act, by:

1. Degesch America's Certified Applicator certified to Cargill, CISA and the vessel's officers that the fumigant was applied subsurface when in fact it was not;

2. Degesch America's Certified Applicator certified that the fumigant was applied in accordance with rules and regulations of the Federal Grain Inspection Service, when in fact it was not; and/or

3. Other misrepresentations to be shown at trial.

**FIFTH CAUSE OF ACTION**

32.

In addition, or in the alternative, the explosions occurred because of a defect in the formulation, manufacture and/or production of the fumigant, which proximately caused plaintiffs' damages as alleged herein.

33.

At all times mentioned in this complaint, defendants negligently and carelessly formulated, manufactured, produced, inspected, tested and/or, sold the fumigant that was dangerous and unsafe for its intended use because of the presence of impurities and/or diphosphine within the fumigant.

34.

At all times mentioned in this complaint, defendants negligently and carelessly failed to warn plaintiffs that the fumigant was dangerous and/or unsafe for its intended uses because of the presence of impurities and/or diphosphine within the fumigant.

35.

The defective fumigant and/or defendants' failure to warn of the defective fumigant proximately caused the disruption of maritime commerce; specifically, the ocean transport of the grain aboard the M/V MARIA V upon the navigable waters of the United States, as alleged herein.

36.

As a direct and proximate result of the negligence and carelessness of defendants as described above, plaintiffs suffered the damages enumerated in this Amended Complaint, which are compensable under the general maritime law.

## AS TO ALL CAUSES OF ACTION

37.

Prior to the commencement of this action, Cargill and/or CISA and/or Amlin and/or Steamship became the owner of the claims for damage and indemnity asserted herein, and bring this

action on behalf of, and for the interest of, all parties who are, were, or may become, interested in the claims as their respective interest may ultimately appear.

38.

All and singular, the maters alleged are true and the correct.

39.

Plaintiffs reserve the right to amend and supplement this complaint as further facts become available.

**WHEREFORE**, plaintiffs pray that:

1) Process in due form of law issue against defendants Degesch Americas, Inc., Detia Degesch Gmbh and D & D Holdings, Inc., citing them to appear and answer this Complaint;

2) That after due proceedings are conducted, judgment be entered in favor of plaintiffs and against defendants for all sums shown to be due and owing at trial, together with interest and costs, including attorneys' fees.

3) That plaintiffs be awarded such other relief as it may be entitled to receive.

Respectfully submitted,

*/s/ John F. Fay, Jr.*
John F. Fay, Jr. (La. Bar #1870), T.A.
*jfay@faynelsonfay.com*
Craig R. Nelson (La. Bar Roll #8755)
*nelsonfay@cox.net*
Christina P. Fay (La. Bar #1869)
*cpfay@faynelsonfay.com*
FAY, NELSON & FAY, LLC
Energy Centre
1100 Poydras St., Suite 2900
New Orleans, Louisiana 70163

Tel: (504) 799-2252
Fax: (504) 383-8920
*Attorneys for Cargill, Incorporated, Cargill International SA, Amlin Corporate Insurance, Chartis Europe, HDI-Gerling NV, Minnetonka Insurance Company, Tokio Marine & Nichido Fire, and The Steamship Mutual Underwriting Association (Bermuda) Limited*

**PLEASE ISSUE SUMMONS AND AMENDED COMPLAINT TO:**

**DETIA DEGESCH GMBH
DR. WERNER FREYBERG, STR. 11
D-69514 LAUDENBACH
GERMANY**

## CERTIFICATE OF SERVICE

I hereby certify that on December 7th, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Henry A. King, Esq. at hking@kingkrebs.com

Michael L. Vincenzo, Esq. at mvincenzo@kingkrebs.com

C. Michael DeCamps, Esq. at mdecamps@sansanderson.com

Douglas A. Winegardner, Esq. at dwinegardner@sansanderson.com

                                          */s/ John F. Fay, Jr.*
                                             John F. Fay, Jr.