```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


CARGILL, INC., CARGILL                        CIVIL ACTION
INTERNATIONAL SA, AMLIN
CORPORATE INSURANCE, CHARTIS
EUROPE, HDIGERLING NV,
MINNETONKA INSURANCE, and TOKIO
MARINE & NICHIDO FIRE, for and
on behalf of all Subscribing
Cargo Insurers, and THE
STEAMSHIP MUTUAL UNDERWRITING
ASSOCIATION (BERMUDA) LIMITED


VERSUS                                        NO: 11-2036


DEGESCH AMERICA, INC., DETIA                  SECTION: R
DEGESCH GMBH, and D&D HOLDINGS,
INC.
```

**ORDER AND REASONS**

Defendants Degesch America, Inc. and D&D Holdings, Inc. (collectively, "Degesch") move the Court to dismiss under Federal Rule of Civil Procedure 12(b)(6) plaintiffs' products liability, fraudulent misrepresentation, negligent misrepresentation, and unfair trade practices claims. For the following reasons, defendants' motion is GRANTED with respect to plaintiffs' products liability, fraudulent misrepresentation, and unfair trade practices claims, and DENIED with respect to plaintiffs' negligent misrepresentation claim.

I.   **BACKGROUND**

This case arises out of a fire aboard the vessel M/V MARIA V. Plaintiffs Cargill International SA (CISA) and Cargill Inc. (collectively, "Cargill plaintiffs") contend that they were the owners, buyers, sellers, consignees, successors in title, and/or shippers of 59,691.878 metric tons of yellow corn loaded aboard the vessel at the Westwego, Louisiana export grain elevator.[1] Plaintiffs Amlin Corporate Insurance, Chartis Europe, HDI-Gerling NV, Minnetonka Insurance Co., and Tokio Marine & Nichido Fire insured the cargo, and plaintiff The Steamship Mutual Underwriting Association (Bermuda) Limited insured the Cargill plaintiffs' legal liability.[2]

Plaintiffs allege that, pursuant to a grain sales contract dated April 15, 2010, Cargill sold 60,000 metric tons of yellow corn to CISA, which CISA then sold to a Syrian buyer.[3] The Cargill-CISA contract called for Cargill to deliver the cargo in accordance with CISA's final documentary instructions, which required a fumigation certificate demonstrating that the vessel's holds were fumigated at 60 grams of phosphide per one thousand cubic feet of each hold space.[4] Cargill then contracted with

---

[1]   R. Doc. 15 at 2-3, 6.

[2]   *Id.* at 3.

[3]   *Id.* at 5.

[4]   *Id.*

defendant Degesch America for the sale of fumigant and provision of fumigation services for Cargill's grain shipment.[5] Degesch America agreed to fumigate the holds of the vessel using a "Subsurface Trench-In Method" and the distribution of phosphide called for in the Cargill-CISA contract.[6]

On August 19, 2010, after the grain was loaded aboard the vessel at a berth by Cargill's export grain elevator in Westwego, Louisiana, Degesch fumigated the corn with the fumigant Phostoxin in all seven of the vessel's cargo holds.[7] Degesch issued a Fumigation Certificate and a Statement of Fumigant Application Compliance certifying that all cargo holds were fumigated in accordance with Federal Grain Inspection Service (FGIS) rules using the Subsurface Trench-In Method, with 60 grams of Aluminum Phosphide per 1000 cubic meters of hold space.[8]

Allegedly in reliance on these representations, the vessel's crew closed and secured the cargo hatch covers, and Cargill permitted the M/V MARIA V to depart for the destination port in Syria.[9] Shortly into the journey down the Mississippi River, a series of explosions erupted in each of the vessel's seven cargo

---

[5]   *Id.*

[6]   *Id.*

[7]   *Id.* at 6.

[8]   *Id.*

[9]   *Id.*

holds over the course of two hours,[10] requiring the crew to seek safe harbor. The vessel's classification society then allegedly ordered the corn removed while the vessel underwent investigation, during which time the Syrian purchaser renounced its contract for the purchase of the corn.[11]

The investigation concluded that the fumigant was applied in piles on the surface of the cargo rather than applied uniformly subsurface, as required by defendants' own Application Manual, FGIS regulations, and the terms of the contract.[12] The investigation found that the piling method caused the fumigant to create phosphine gas at an unsafe rate, and the gas eventually combusted within the head space of each cargo hold.[13] One of the surveyors suggested that impurities or diphosphine in the fumigant may have caused the explosions.[14] Plaintiffs allege that the explosions resulted in extensive monetary losses exceeding $14 million.[15]

---

[10]   *Id.*

[11]   *Id.* at 7-8.

[12]   *Id.* at 7.

[13]   *Id.*

[14]   *Id* at 7-8.

[15]   *Id.* at 8-9.

In their amended complaint,[16] plaintiffs presented claims for negligence in defendants' manufacture and/or application of the fumigant; negligent misrepresentation in defendants' false certification of the fumigation method used; fraudulent misrepresentation based on the same false certification; breach of contract or warranty; violation of the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA); and strict products liability.[17] Defendants contend that plaintiffs have failed to state a claim as to the products liability, misrepresentation, and unfair trade practices claims, and they moved for dismissal of those claims.[18] Plaintiffs opposed the motion.[19]

The Court heard oral argument on defendants' motion to dismiss and requested additional briefing on the choice of law

---

[16] Plaintiffs sought and received permission to amend their original complaint after defendants moved for dismissal and more definite statements with respect to all claims asserted in that original complaint. *See* R. Docs. 1, 4. The amended complaint supersedes the original, and defendants have withdrawn their request for a more definite statement and restated their request for dismissal. *See* R. Doc. 20-1 at 5. At oral argument, the Court denied as moot defendants' motion attacking the original complaint.

[17] R. Doc. 15 at 10-15.

[18] R. Doc. 20.

[19] R. Doc. 26.

analysis.[20] The parties agree that general maritime law applies to these claims.[21]

## II. STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949; *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

---

[20] R. Doc. 29.

[21] R. Docs. 33, 36. The parties agree that general maritime law applies here based on the existence of a maritime contract. It is equally clear that general maritime law applies to plaintiffs' tort claims, since both the location and the connection-to-maritime-activity tests, described and refined in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), are satisfied. The explosions within the vessel's holds occurred on navigable waters about an hour after the vessel had begun its voyage to Syria. *See* 1 *Schoenbaum's Admiralty and Maritime Law* § 3-5 (5th ed.) ("[A] tort occurs where the negligent or intentional act takes effect, not where the act occurred."). Likewise, the incident involved a real risk to commercial shipping (the cargo went undelivered, after all), and the activity at issue (preparing the vessel's holds for the cargo) clearly bore a substantial relationship to traditional maritime activity. *See Grubart*, 513 U.S. at 538. To the extent that the different tort claims involved different characterizations of the same course of conduct, *Grubart* made clear that "we need to look only to whether one of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor." *Id.* at 541.

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

**III. DISCUSSION**

**A.   Products Liability Claim**

Plaintiffs' products liability claim alleges that the fumigant used was unsafe for its intended use because of "impurities and/or diphosphine" present within the fumigant, and that defendants negligently failed to warn of these impurities. Plaintiffs' theory appears to be grounded in the suggestion of one of the surveyors that this defect caused or contributed to the explosions. Defendants claim that this "slim reed" is the sort of conclusory allegation that fails to satisfy the Rule 8 "plausibility" standard explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Courts recognize the doctrine of strict products liability as part of the federal maritime law, *see E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 865 (1986); *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987), and generally embrace § 402 of the Restatement (Second) of Torts as "the best expression of the [doctrine of strict liability] as it is generally applied." In re *Parker Drilling*, 2006 U.S. Dist. LEXIS 4332, at *12 (E.D. La. 2006) (quoting *Ocean Barge Transp. v. Hess Oil Virgin Islands*, 726 F.2d 121, 123 (3rd Cir. 1984) (collecting cases)). The Restatement provides:

8

> (1) One who sells any product in a defective condition
> unreasonably dangerous to the user or consumer or to his
> property is subject to liability for physical harm thereby
> caused to the ultimate user or consumer, or to his property,
> if
>
>> (a) the seller is engaged in the business of selling such
>> a product, and
>>
>> (b) it is expected to and does reach the user or consumer
>> without substantial change in the condition in which it
>> is sold.

*Restatement (Second) of Torts § 402A.*

In this case, further expression of the principles of strict products liability is unnecessary, since plaintiffs have plainly failed to state a claim that is plausible on its face. Plaintiffs base their allegation solely on the opinions of a surveyor unnamed in the complaint. There is no indication of what the impurities might be, how they might have caused the explosions, the basis upon which the surveyor formed his theory, or his qualifications for so doing. There is likewise no description of diphosphine or its properties, why its presence in the fumigant is plausible, or how it might have caused the explosions. Absent these allegations, there is no plausible claim that the product was unreasonably dangerous. *Cf. Henderson v. Sun Pharms. Indus.*, 809 F. Supp. 2d 1373, 1379 (N.D. Ga. 2011) (finding plaintiff's allegations that "[fosphenytoin] drug products contained impurities in the manufacturing process" insufficient to state a claim following *Iqbal* when plaintiff did not specify the

9

impurities or allege how those impurities caused Plaintiff to develop her medical injuries).

At oral argument, the Court allowed plaintiffs to amend their complaint to state a products liability claim that is plausible on its face. Now four months later, plaintiffs still have not so amended. Their strict products liability claim is therefore dismissed. Plaintiffs' failure-to-warn claim, sounding in negligence, is similarly dismissed; since plaintiffs have failed to demonstrate an unreasonable danger with the fumigant caused by diphosphine or unnamed impurities, they likewise have failed to demonstrate any negligence of defendants in failing to warn of such dangers.

**B.   Negligent Misrepresentation Claim**

The Fifth Circuit has noted that federal maritime law recognizes the tort of negligent misrepresentation, *see Otto Candies, LLC. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 534-35 (5th Cir. 2003), and has approvingly cited Section 552 of the Restatement (Second) of Torts for the controlling standard. Thus, to state a claim for negligent misrepresentation under general maritime law, plaintiffs must allege that

>    (1) [Degesch], in the course of its profession, supplied false information for [Cargill's] guidance in a business transaction;
>
>    (2) [Degesch] failed to exercise reasonable care in gathering the information;

10

>  (3) [Cargill] justifiably relied on the false information in a transaction that [Degesch] intended to influence; and
>
>  (4) [Cargill] thereby suffered pecuniary loss.

*Otto Candies*, 346 F.3d at 535.

Here, plaintiffs have stated a plausible negligent misrepresentation claim. They have alleged that Degesch's Certified Applicator certified to plaintiffs that the fumigant was applied subsurface, that the fumigant actually was *not* applied subsurface, that plaintiffs acted in reliance on this false information, and that they suffered damages as a result. An inference that the Certified Applicator failed to act with reasonable care is reasonable from the allegations in the complaint. Defendants' motion to dismiss plaintiffs' negligent misrepresentation claim is therefore denied.

**C.  Fraudulent Misrepresentation Claim**

It is well settled that a federal court sitting in admiralty is to apply the common law of fraud. *Elmwood Dry Dock & Repair v. H & A Trading Co.*, 1997 U.S. Dist. LEXIS 20309, *67 (E.D. La. 1997) (citing *Black Gold Marine, Inc. v. Jackson Marine Co., Inc.*, 759 F.2d 466 (5th Cir. 1985)). Stating a fraud claim thus requires that plaintiffs allege:

>  (1) a false representation - usually of fact - made by the defendant;

11

>    (2) knowledge or belief on the part of the defendant that the representation is false, or an insufficient basis to make the representation;
>
>    (3) an intention to induce the plaintiff to act or refrain from acting in reliance on the information;
>
>    (4) justifiable reliance by the [plaintiff]; and
>
>    (5) damage to the plaintiff resulting from the reliance.

*Id.,* at *67-68 (citing *Prosser and Keeton on the Law of Torts* § 107 (5th ed.).[22]

Plaintiffs' allegations of fraud implicate the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Conerly Corp. v. Regions Bank*, 2008 U.S. Dist. LEXIS 94674, at *27-28 (E.D. La. 2008) (citing *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting Fed. R. Civ. P. 9(b)). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were

---

[22] The elements are substantially similar under Louisiana law. There, to prevail on a claim of intentional misrepresentation, plaintiffs must show (i) a misrepresentation of a material fact, (ii) made with the intent to deceive, and (iii) causing justifiable reliance with resultant injury. *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999) (citing La. C.C. art. 1953; other citations omitted).

fraudulent." *Id.* (citations omitted). "Put simply, Rule 9(b) requires the complaint to set forth the who, what, where, and how of the events at issue." *Id.* (citations and quotation marks omitted). The second sentence of Rule 9(b) "relaxes the particularity requirement for conditions of the mind such as scienter: Malice, intent, knowledge, and other conditions of the mind may be alleged generally." *Id.* (citations omitted). But while Rule 9(b) "expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Id.* (citations omitted). Rather, the plaintiffs "must allege specific facts supporting an inference of fraud." *Id.* (citations omitted).

Plaintiffs' second cause of action contends that the damages plaintiffs suffered:

> were proximately caused by the negligent misrepresentation of Degesch America and/or the fraudulently made statements made by Degesch America, in falsely representing and/or intentionally misleading Cargill, CISA and/or the vessel's officers as to the manner in which defendants performed the fumigation aboard the M/V MARIA V, in the following respects:
>    1. Degesch America's Certified Applicator, Sam Schoo, certified to Cargill and the vessel's officers that the fumigant was applied subsurface when in fact it was not;
>    2. Degesch America's Certified Applicator, Sam Schoo, certified that the fumigant was applied in accordance with rules and regulations of the Federal Grain Inspection Service, when in fact it was not; and/or
>    3. Other misrepresentations to be shown at trial.

13

Absent from the complaint are facts that invite an inference of fraudulent intent, as plaintiffs do not allege that Degesch's Certified Applicator knew or had reason to believe that the fumigant was not applied in accordance with the contract and FGIS regulations. Nor do plaintiffs state that (much less explain why) defendants would intentionally misrepresent the particular fumigation procedure used. Alleged facts are sufficient to support an inference of fraudulent intent if they either "(1) show a defendant's motive to commit [] fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002)). But "[p]laintiffs do not sufficiently allege motive by making generic allegations that the defendant had a financial interest in carrying out the alleged fraud." *McNamara v. Bre-X Minerals, Ltd.*, 57 F. Supp. 2d 396, 405 (E.D. Tex. 1999); *see also Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) (allegations of a motive to increase the value of personal stock holdings by withholding information to induce investor participation in a tender offer are insufficient to allege fraud); *Herrmann Holdings*, 302 F.3d at 565-66 (allegations of delay in order to benefit therefrom are insufficient); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (allegations of a motive to inflate the stock price and value of

defendant's investments are insufficient). Here, plaintiffs indicate *no* motive whatsoever in their complaint for issuing a false certification, and they urge the Court in their opposition to defendants' motion to infer an illicit motivation without providing any facts that support such an inference.

Without alleging facts to invite an inference of fraudulent intent, plaintiffs have failed to satisfy Rule 9(b)'s mandate. This is notwithstanding plaintiffs' citation to *Diamond Servs. Corp. v. Oceanografia, S.A. DE C.V.*, 2011 U.S. Dist. LEXIS 27358 (W.D. La. 2011), in which the court denied defendant's motion to dismiss despite the plaintiff's failure to allege facts relating to certain elements of his claim. The court there noted that certain factual details could be obtained only through discovery, and since judging the sufficiency of the complaint was a "context-specific task" requiring the court "to draw on its judicial experience and common sense," denial of summary judgment was appropriate in context. *Id.,* at *19. Importantly, however, that case involved the Rule 8 standard, whereas this case involves Rule 9's heightened pleading standard. And even though fraud may be averred generally under Rule 9(b), "simple allegations that defendants possess fraudulent intent will not satisfy[.]" *Dorsey*, 540 F.3d at 339 (citations omitted). Plaintiffs "must allege specific facts supporting an inference of

15

fraud," *id.*, and they have failed to do so. Their fraudulent misrepresentation claim is hereby dismissed.

**D.   Unfair Trade Practices Claim**[23]

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[,]" La. R.S. § 51:1405, and confers a private right of action on "any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal," from these unfair trade practices. La. R.S. § 51:1409(A). To succeed on a LUTPA claim, a plaintiff must show that the alleged conduct "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs. v. Shell Deepwater Prod.*, 35 So. 3d 1053, 1059 (La. 2010) (quoting *Moore v. Goodyear Tire & Rubber Co.*, 364 So.2d 630, 633 (La. App. 2nd Cir. 1978). What constitutes an unfair trade violation is determined on a case-by-case basis. *Cheramie Servs*, 35 So. 3d at 1059. However, conclusory allegations of unethical or oppressive conduct not supported by the record are insufficient. *See Lilawanti Enters. v. Walden Book Co.*, 670 So. 2d 558, 561 (La. App. 4th Cir. 1996).

---

[23]   The Court need not determine whether the attorneys' fees provision of LUTPA, or any other provision for that matter, is preempted by general maritime law, since plaintiffs plainly fail to state a LUTPA claim that is plausible on its face.

Here, plaintiffs' LUTPA claims fail for much the same reason their fraud claim fails: they have not adequately alleged defendants' intent to deceive. Critically, "the range of prohibited practices under LUTPA is extremely narrow," *Cheramie Servs*, 35 So. 3d at 1060, and there is "a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). Whatever the dangers in providing a substandard fumigation and yet certifying to its conformity with contractual and legal requirements, LUTPA is concerned with the intentional deception undergirding defendants' acts. Indeed, "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA," *Cheramie Servs*, 35 So. 3d at 1060, and this "egregiousness" often involves "the breach of a special relationship of trust" not present in this case. *See Shaw Indus. v. Brett*, 884 F. Supp. 1054, 1058 (M.D. La. 1994) (quoting *Turner*, 989 F.2d at 1422, and finding that "the relationship between the parties and the nature of the disagreement ... [was] more analogous to a breach of contract dispute than one involving unfair or deceptive acts," despite plaintiff's allegations of defendant's "deceitful, coercive, manipulative, and intentional misrepresentations"). Plaintiffs have failed to invite any inference of egregious wrongdoing by defendants, and

17

consequently, they have failed to state a claim under LUTPA. Their unfair trade practices claim is hereby dismissed.

**IV.  CONCLUSION**

For the foregoing reasons, plaintiffs' strict products liability, fraudulent misrepresentation, and unfair trade practices claims are hereby DISMISSED. Their negligent misrepresentation claim survives defendants' motion to dismiss.

New Orleans, Louisiana, this 21st day of June, 2012.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE